The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Catherine E. Zinoff presiding. Good morning, counsel. This is 4-241165, People of the State of Illinois v. Dmitry G. Rogatchev. Would counsel identify themselves for the record? First, counsel for the appellant. Nathan Swanson for appellant. And counsel for Appellee. Good morning. My first name is Allison Page. My last name is Brooks. Thank you. At this time, Mr. Swanson, you may begin your argument. Thank you, Your Honor. May it please the court and counsel. My name is Nathan Swanson and I'm here on behalf of Appellant Dmitry Rogatchev. Mr. Rogatchev was convicted of first-degree murder following a jury trial. Appellant raised four allegations of error in his brief. And unless there are any specific questions about those, I will concentrate on two of them. First, the trial court's denial of an involuntary manslaughter instruction, and then the trial court's denial of appellant's request to represent himself. With regards to the involuntary manslaughter instruction, the central question is whether there was sufficient evidence or any evidence for the jury to conclude that Mr. Rogatchev acted recklessly. And in this, it's important to focus on the circumstantial nature of this case. There were no eyewitnesses to the offense. There was no testimony about how the blows were delivered. The state has suggested that Mr. Rogatchev used a wine bottle. That was pure speculation on the part of one of the officers. There was no evidence to that effect beyond his speculation. Basically, there's no testimony about these wounds were occurred. Any motive, what happened? Well, we don't... Excuse me, counsel. Good morning. We don't need to consider motive when we're looking at this. I mean, we're looking at whether the trial court erred in refusing this instruction, and we look for abuse of discretion. And here, the record reflects that trial court refused this instruction as it thought that the defendant's act in slapping the victim, and we have an admission that he slapped the victim, was intentional, and thus, not any evidence of recklessness. Now, the trial court's reasoning, even if erroneous, wouldn't have mattered, would it, if there were any other evidence of the defendant's recklessness? So, you had started to talk about the facts here, that they were circumstantial, and we know from the autopsy, there's evidence of severe head trauma and a brain bleed. Yes. And a severe injury, there was testimony that there was severe injury, that that type of injury was needed to cause this brain bleed, and that a slap could not have caused it. We know, as I mentioned, the defendant admitted that he slapped the victim's face. Yes. That, as I said, we know couldn't have caused it. So, where was the evidence of recklessness? Well, the evidence of recklessness, Your Honor, and backing up slightly, you're correct that the trial court based its decision to deny this on the idea that the action could not have been done recklessly, it could be done intentionally. However, People v. Potter stands for the principle that even if the act was done intentionally, the defendant could still be reckless as to the result. So, on that point, the trial court's rationale would be erroneous. That's irrelevant, right? With regards to what was the evidence of the defendant's recklessness, essentially, the evidence of the defendant's recklessness was the same as the evidence of the defendant's intent, because there was no testimony about how these injuries occurred, the circumstances of them. The inference that the appellant acted intentionally or knowingly towards the possibility of death, that's a speculation. Is it reasonable? We argue in point two that it wasn't a fair speculation, but even if you think that it was, it was an equally valid explanation or inference that his actions were done with recklessly towards the possibility of death, the jury could have made that inference and reached that conclusion just as equally, and therefore they should have been. From what? From what evidence? From the testimony that, I'm sorry, essentially, almost from the absence of it, from the testimony that the Dr. Newman's testified that the most she could say effectively was that the victim had been struck at least once on the head by something blunt, by which he meant sharp. She wasn't necessarily saying it was an object, but it just couldn't have been something sharp. What was the circumstances that happened? No one knew. So you could infer that however that blow was delivered, it was reckless as towards the possibility of death. Bob, do we get to add in the defendant's statement acknowledging that he slapped her once and then later acknowledging that, yeah, he might've hit her multiple times, and then finally saying, I killed her, I killed her. Do we get to consider that at all? Certainly it is fair to consider those things, but as to the, taking those kind of in reverse order, with regards to the, I killed her, I killed her, the context of that was the officers talking to him and saying, well, she's dead. It wasn't him necessarily concluded that he absolutely had intentionally killed her. It was him saying, well, I hit her, she's dead. Therefore I must've killed her. That was kind of his, I should say that was his conclusion rather than his confession. As to the slapping, he said he might've done, but again, the circumstances of that are completely unknown because they don't know. It's not, you know, he may have hit her several times. Well, where did he hit her? Why did he hit her? How hard did he hit her? All of those things are completely unknown. So the, you know, the possibility that he slapped her and call her, was he, you know, it's the testimony that the slap alone could not have caused it, but that's the only thing he admitted to. If without any kind of knowledge of how he struck her, they did so in some manner from which it would not be possible to infer an act of recklessness. Then the jury should have instructed that on the involuntary manslaughter. Well, if we, if we look at this and try to analyze it with the factors mentioned by our Supreme Court in Di Vincenzo, you argue that looking at these factors really leads to the conclusion that the trial court did error. But let's, if we take a look at these factors, the size and strength, size or strength of the two persons involved, whether they were different. And certainly there is more, I mean, you argue that there was some difference, but quite frankly, we know that the victim was frail, that the defendant was a caregiver, and there was a physical difference in their size. Certainly the difference in their strength can be inferred from these factors. With respect to the severity and duration of the beating and blows, it's your contention, and I believe you argue in your brief that really there's no information or evidence, but in his statement and in the information, in the testimony that did come in, he admitted kicking her. He admitted, actually, his version was she wanted medication. She fainted, went to the floor. He might've hit her too hard when he tried to put her in a chair. There is enough evidence there of physical interaction together with the autopsy testimony as to the severity of the injuries that certainly would have given sufficient evidence here rather than no evidence. We know that there was, you argue, no use of a weapon. We don't know if there was a bottle used or not. And then multiple wounds. We certainly know that was more than one wound, more than the slap, again, because of the testimony of the pathologist. With regard to the victim's defenselessness, I believe you argue that the only evidence there was the victim's age. But given the fact that the defendant was a caregiver, given the fact that he was aware of, and we know from the record of her health issues, which were numerous, why wasn't this enough to constitute her defenselessness and quite frankly, a constellation of these factors? Well, what I would say to that is certainly I wouldn't be arguing with regards to this point that those conclusions aren't reasonable inferences. Absolutely they were. The problem here is that, again, Dr. Yuma's testimony was that the victim had been struck at least once on the head, but no further than that. There were several bruises noted, but they were older, some were older, some were healing, some were not. I believe the testimony regarding the kicking was that it was semi-accidental. But all of these things, could one potentially infer from them that there was a longer beating? It's possible, certainly. But there was no definitive evidence as to that to establish that, yes, it absolutely was an extended beating. With regards to the severity of the beating, the testimony was that while she had a fairly substantial brain bleed, there was no fracture to the bone, which is somewhat incongruous, but it makes it difficult, certainly, to infer with any certainty the severity of the beating. The defenselessness, the testimony that her health was somewhat improving, she may have been defenseless. Again, I wouldn't necessarily argue that that's not a reasonable inference, but we just don't know what happened. Let's break it down to a simpler set of facts. Your entire involuntary manslaughter is based on the claim that it was a slap, right? That the only thing that was admitted to, the only admission my client made was that he hit her and that would not normally carry an anticipation of death, yes. That it was a slap? Yes. Okay. Both doctors, did they not testify that her injuries were caused by at least two severe blunt force blows to the head, possibly inflicted by a foreign object, and didn't at least one of them say it could not have been caused by a slap? Yes, although my understanding of that is... Well, hang on, hang on. So, first of all, is any of that incorrect? No, Your Honor. Okay. Once your guy says, yeah, I slapped her, the doctors testify to the extensive damage and testify to their medical conclusion that it could not have been by a slap, what evidence is there to give you involuntary manslaughter? So, they testified that all of her injuries could not have been caused by a slap. They did not strictly testify that it couldn't have been caused by following the slap or anything like that. But you're basing it all on the slap. I mean, you've hung your hat on a slap and it could have been reckless and it could have been involuntary. I'm saying, once we have medical testimony testifying that their professional opinion is that, A, all of these other injuries, especially the head injuries, are inconsistent with A slap, and B, could not have been caused by a slap. That leaves you with nothing. Well, that's... But then I would fall back on the argument that even if that's the case, if I would agree that that means the jury has no evidence from which they could conclude that he acted recklessly, then the question becomes, is the evidence such that the jury could not infer Mr. Roberts had acted recklessly? So, if you take... You've got to have some. I mean, the requirement is you have to have some evidence. Right. Exactly. And in that case, the evidence from Dr. Euben that the victim was struck experienced one or more blows to the head without any testimony about how strong those blows were, the circumstances of them, how they were delivered, it would be reasonable if the jury could infer that the blows were delivered recklessly as to the possibility of death. Now, again, the blows were delivered intentionally. That's not the basis of the argument. But according to your guy, it's A slap. It's not a multiple blows. See, we start from a premise that the involuntary manslaughter is based on A slap, which you say, okay, that's enough evidence upon which to conclude that there's a possibility of involuntary manslaughter. I'm suggesting, well, once the physical evidence refutes that and the doctor testifies to his professional opinion that it could not have occurred as a result of A slap, then there is no evidence upon which you can base a conclusion that it might be involuntary manslaughter. If that's the case, then any fact, regardless of how ridiculous it may be, as long as I can get that fact in the record in front of a jury, should be enough for an involuntary manslaughter. And that's not what the law is. Well, it's my response would be that certainly the medical experts testified to that. The jury would have been within their rights to discount that if they wanted to. And to suggest that the jury had to conclude that the doctor's testimony would be accepted. And now you're going to prove beyond a reasonable doubt as to the offense. Your issue here is involuntary manslaughter. Was there enough to put in an involuntary manslaughter instruction? And I'm suggesting once the medical evidence and the testimony of the doctors refutes A slap, you're done. And I obviously I can't, you know, I would never suggest that I say that that is wrong, but my retort would be. But you wouldn't be the first guy that said I was wrong. It's okay. Don't worry about it. As long as I do it respectfully. How about that? As respectfully as possible. Again, I would just I would simply respond to that. As to this, the question is, was there some evidence? Was there contrary evidence? Absolutely. 100% that those doctors provide contrary evidence to that. But I don't think it would be appropriate for the trial court to conclude under the circumstances, the jury has to believe the medical evidence and therefore there is no viable evidence to support the involuntary manslaughter instruction. The standard is some evidence from which the jury could reasonably infer that that evidence existed. Whether or not that evidence was ultimately compelling that would have moved the jury. That's a different analysis. But here the question is, was there some evidence? And there was the existence of contrary evidence, not the standards. It took up too much of your time. I'm sorry. We've got a couple other issues. One is substitution of judge for cause. I have a question with respect to that issue. You do argue extensively that the trial court erred in denying defendant's motion for substitution for cause. But I don't see in the record any place where either the trial court or the chief judge outright denied defendant's motion. Certainly the chief judge indicated that she felt that certainly a written motion with an affidavit would be required. And certainly here the defendant had several years to produce that and didn't. So where was there any outright denial here or any ruling? I mean, the motion in essence was abandoned, was it not? Well, I would argue your honor that it was not abandoned, but that it was in effect denied when she, the presiding judge, I believe her statement was nothing further will be entertained as it relates to substitution of judge until you properly file a pleading, which you have not done. So I think the reasonable conclusion when she says, I'm not going to consider it any further is that she's denying it until something more occurs. But what's relevant to that is the circumstances the trial court had transferred it to the presiding judge, knowing that the written motion had not been filed yet and the affidavit had not been filed that under those circumstances, the presiding judge should have reviewed the motion on the merits as opposed to as opposed to saying that nothing further would be considered. Well, you argue that in your brief at page 27, but there is no authority provided. I mean, you indicate that the trial court waived the written motion and passed the matter to the presiding judge. The presiding judge was thereafter required to conduct an evidentiary hearing to find out the basis of the claim, et cetera. The failure to do so was plain, evident, obvious error. But what case are you relying on? I mean, we have a statute that the chief judge of that circuit was relying on. You know, I would say, I believe I rely on people V Johnson or the principle that failing to conduct a hearing on the motion for the change of judge leaves the alleged leaves the allegations unaddressed. And that is reversible error. Well, but the statute requires certain pleadings to be motions to be filed. So I'm not really following the argument where this judge had the obligation to hold a hearing without any written motion or certainly without the affidavit. Well, and that was the argument I believe raised in people V Harston, which obviously is some of the older case. In that case, there'd been an oral motion for change of judge without supporting affidavit. The argument was that the failure to support with an affidavit warranted denial of it, but the court of appeals found that there should be an opportunity to correct that, that that's what should have been given. And that was not afforded here. Go ahead, justice. No, I'm sorry. I thought she said, I won't consider it until you file a written motion and affidavit. And she did say that, but once it was returned to the trial court, the trial court proceeded as if it had been denied. Well, it had been brought up several times. If you move to continue, if you move to continue and the judge says, well, submit something, giving me a reason why you need to continue and you don't, is that a denial of your motion to continue? Under that circumstance, that would not be a denial of motion to continue, I would agree. Well, that's the same thing we've got here. I think the distinction here would be that when the, that the, when it returns to the trial court, the trial court proceeds as it has been denied, as opposed to the trial court, having told the, giving them the opportunity to resolve it. But counsel, if I may write, I mean, this occurred in August of 21, again, on September 13th, the defendant said he wasn't able to access the law library. And we go through this and the court says, keep a log when you're allowed access. And I mean, this keeps going through this process, even after that, whereas there's this suggestion that he needs access to the law library to finish his written motion. And then he never, meaning the defendant never mentioned substitution of judge again, and doesn't file a written motion after that. So why isn't that abandonment or waiver of his request? Again, you know, I've just said that under those circumstances, I don't think it'd be considered abandonment, but I take your point. Thank you. We're, we've taken you beyond your time. At this point, I think we'll turn to counsel for Eppley. Thank you, Mr. Swanson. Thank you, your honors. May it please the court and counsel. It seems like what the defendant is asking for is an instruction based on the absence of evidence rather than actual and affirmative evidence of, of recklessness. And in this situation, the slap that was referred to in the statement was actually more of a, an unrelated offense rather than an included offense, because the evidence precluded the possibility that that could have caused the injuries and the very severe injuries of very large subdural, subdural hematoma, which also they think the forensic pathologist also ruled out a blow to the, of the head to the, by striking her head on the floor, if that was a possibility, also could not have caused this. So the defendant says he doesn't, there's no evidence about how hard he hit the victim, but yet the, the, the inference here is because there was a very, very severe injuries here, very large subdural hematoma. So that's, that is evidence of how hard he hit her. And also the defendant's statements are very important in this context, because although he denied memory of what happened, he was told by the police that the mark on the victim's head could not have been left by his hand. And after that, he said he did what the facts showed. So essentially he's, he's not denying that, but he's also, in fact, agreeing with the police's theory of what happened. So the use of an object could be inferred by the presence of liquor bottle at the scene of the crime, but there's also the, the forensic pathologist testimony agreeing that a liquor bottle could have caused this type of injury. So all the cases defendant cites, which were essentially like a single punch and the death was caused by a stroke or a fall or some sort of rare medical condition and not by the blows itself. And that's why all the cases the defendant relies on are distinguishable. Here, in order to be entitled to instruction, it would have to be rational for the jury to find the defendant not guilty of first degree murder and convict on involuntary manslaughter when the difference is the risk. And to be guilty of knowing murder here, what he was convicted of, the minimum requirement of knowledge is strong probability of death or great bodily harm. And so if he's striking this woman multiple times with a liquor bottle strong enough to cause a very large subdural hematoma, I think it's one of the most obvious cases possible that he knowingly inflicted or had knowing, knew of the strong probability of at least great bodily harm in doing so. That makes it not rational for a jury to find him not guilty of first degree murder on these facts, and therefore he would not be entitled to an involuntary manslaughter during instruction, particularly when there was absolutely no evidence of recklessness. Counsel, if I may, just for the record, do you concede that the trial court was mistaken in believing that an intentional act categorically precluded an involuntary manslaughter instruction? Yes, I believe the defendant is correct on that, that the fact that the but it's inconsequential here, but that, yes, it is true. I understand. I just wanted to clarify that issue. Yes, thank you, Your Honor. And I think the defendant's point is he could be reckless as a result if he intentionally slapped her, for example, that that is the trial court's view. I think on that was was incorrect, but not not consequential for the reasons I just argued. So there was, in fact, sufficient evidence of the knowledge element. So that other argument defendant raises fails on the sufficiency of evidence. With respect to the motion, the request to recuse, I think, is how it was initially styled, although it was transferred as if it had been a motion to substitute judge. There's a statute, 114-5D, which requires here a written motion affidavit. And one reason is you have to make specific allegations of cause. We still don't even know in this record exactly what his allegations of cause were because he never specified them. To say that the judge was required, that the chief judge to who it was referred to as presiding judge, was required to make an evidentiary hearing on these sort of nonspecific allegations of cause orally made, even if it had been referred over, it just seems like to be an impossible situation where this statute requires, I mean, the law as it interprets the statute requires specific allegations of cause to be made because they don't want, the policy here is they don't want defendants to just say, my judge is biased. And they say, okay, well, it's going to refer it over and hold an evidentiary hearing on that. You have to make specific allegations because allegations of bias against judges are very serious matter. And that's why you have to make an affidavit. You have to make specific allegations of cause. And none of that was done here, even though he had plenty of time. There was issue about law library access was promptly and correctly addressed by the judge as well. And then just months go by and then nothing further happens by the defendant, even though he's essentially told that nothing further is going to be happening on his issue until he does what he needs to do and present a written motion and affidavit. So he knows he needs to work on that. There's issues as to the law library access, but he kind of just drops the whole thing. And that's why there's no reversible error in that issue. And the last argument I think the defendant wanted to talk about, which he did not get to address, but the issue of his third request for self-representation, I think this is such an obvious example of a case like Rainey, where the defense vacillating, waffling, it's all dilatory. It's near the trial date. It's over three years after the case began. The trial court definitely has discretion in this case, properly found this request was for delay. And I think it warned the defendant. So when the last time he asked for counsel that, you know, it's, you're not just going to be able to keep changing your mind all the time. So I think definitely the trial court has discretion at this point to divide requests for self-representation. So for all those issues, the state would request this court to affirm his conviction. And thank you, your honors. Thank you, Mr. Swanson, your rebuttal. That's very briefly. As counsel for the state said, the question is whether it was rational for the jury to conclude, or whether it was rational for the jury to conclude that Mr. Rogich had acted recklessly. Dr. Kemp testified that the type of injury here could have been caused by a fall, the type of brain bleed she had. Dr. Kemp also testified that the victim was on medication that would have made her more susceptible to brain bleeds. So, you know, there was, you know, as one of the judges, you pointed out, certainly Dr. Hume has testified that the swap couldn't have caused all of these injuries, but the jury could rationally have concluded that there was a slap, there was a fall. Those things cause some of these injuries or more, maybe there's one blow to the head. All of those things, those are all rational under this evidence. And on that basis, the involuntary manslaughter instruction should have been given. And I'll just say briefly with regards to the request for self-representation, the trial court found it was for the purpose of delay. But I think what's important to recognize here is that in August of 2023, and in May of 2024, when Mr. Rogachev made the request to represent himself that were denied, he did not make a request for a continuance. He was never asked if he was requesting for a continuance. There is no indication in the record that there would have been any delay that would have resulted from honoring his request to represent himself. And in fact, in August 2023, when Mr. Rogachev asked to represent himself at that point, and the trial court denies it on the basis of the possibility of delay, the trial court then turns around and grants a continuance to defense counsel. So whatever delay the trial court might have been concerned about occurs anyway, despite Mr. Rogachev never asking for it. So to suggest this was for the purpose of delay is just belied by the record. And on that basis, we'd argue that it was an abuse of discretion. Well, except that, I mean, this trial court had previously granted him the right to represent himself twice. I mean, you know, he had done that and also acceded to his request for different public defenders. And the trial court himself indicated that that usually isn't done, that he didn't usually do it, but he did it twice in this case. So certainly it seems like, quite frankly, I mean, trial court certainly has to be cognizant of its own docket and making sure that cases are heard expeditiously. And certainly it had a history to evaluate in deciding whether or not to grant this last request on the eve of trial, even though it was continued after that. Well, I should clarify, Your Honor, that was the one in August 2023. The other request that was made in May of 2024, I don't believe there were any continuances after that, that was granted. But I was also going to point out that there was no request for continuance by Mr. Robochev, so to conclude that there would have been a delay is speculation. And what do you think your argument would have been if the court would have said, okay, let's go? What do you think the argument would have been now? Oh, if the court said, yes, you can represent yourself. And we're going to trial right now. Well, it would depend if you requested it. I got a hunch it would be the court abused its discretion in requiring the defendant to go to trial immediately after just allowing him to represent himself. There's no good answer to that question. I would agree with that, Your Honor. I don't think I have a great answer for that one. Certainly possible that argument would be raised, yes. Counsel, if I may just circle back to one question. Do you agree with counsel for the appellee that there is nothing specific in the record as to the allegations of cause that he didn't make any specific statements orally in the record? I do. Thank you. If there are no further questions, I would just reiterate our request that his convictions be reversed and then the matter remanded for appropriate further proceedings. Thank you very much. At this time, I don't see any further questions. So the court thanks both of you for your arguments, your excellent arguments this morning. We'll take the matter under advisement. And at this time, court is adjourned for the day.